UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY,<br>Plaintiff,<br><br>vs.<br><br>AARON THOMAS and ITEARICES LINCEY as personal representative of the Estate of Shawn Reed,<br>Defendants. | )<br>)<br>)<br>) Case No. 1:10-cv-1335-RLY-DKL<br>)<br>)<br>)<br>)<br>)<br>) |

**ENTRY GRANTING PARTIAL SUMMARY JUDGMENT**

On April 21, 2009, Detective Jeffrey Patterson of the Indianapolis Metropolitan Police Department was dispatched to the Family Video store at 30th and Georgetown Road to investigate a shooting. When he arrived, he found the lifeless body of Shawn Reed lying in the parking lot approximately 20 feet away from a Nissan Pathfinder SUV which belonged to Aaron Thomas. The SUV had both front doors open, its lights on and significant damage to its interior. Reed had been shot three times, a glancing wound to his side and two shots into his back. Thomas had also suffered a gun shot wound and was transported to Methodist Hospital. Thomas admitted shooting Reed, but claimed Reed had shot him first when Thomas resisted being robbed by Reed. Thomas claimed to have wrestled the gun away from Reed, as the two of them fought and rolled out of his SUV and into the Family Video parking lot.

According to Thomas,[1] in addition to his employment with the Indianapolis Fire Department, he owns a business in the adult entertainment field. After encountering Reed earlier that evening, he had asked Reed if he wanted to make some money participating in a pornographic video/photo shoot at Thomas's studio. Reed initially agreed to participate, but after arriving at the studio he declined to engage in the activity and asked to be dropped off at an apartment in the Speedway section of the Indianapolis metropolitan area. Thomas agreed to give him a ride and transported Reed down 30th Street in accordance with his directions. Reed was quiet and Thomas began to get a little suspicious of him when he asked Reed the name of the apartment complex where he wanted to go, but Reed did not know.

Thomas eventually stopped his SUV along the side of the road near an apartment complex Reed was directing him toward. He told Reed he was not going any further, he had driven him beyond where he had picked Reed up earlier in the evening and he should just get out and walk the rest of the way. Reed did not leave and immediately became very agitated and started yelling at Thomas, asserting that Thomas should take him to the apartments. Thomas became more suspicious and concerned after Reed continued his rage and refused to leave the vehicle, so he swung his SUV around and headed back in the opposite direction on 30th Street until he reached the Family Video store, where

---

[1] Because of Reed's death, the only version of the circumstances leading up to the shooting is the version told by Thomas in his deposition.

Thomas pulled into the parking lot in front of the store and demanded that Reed leave the vehicle.  Reed said nothing and would not leave the vehicle, so Thomas reached for his cell phone to call the police.  As he pulled his phone to him, Thomas saw a gun being pointed at his head and when he jerked back the gun went off.

Thomas was shot in the shoulder and he claims he immediately wrapped his hands around Reed's hands and the gun in an effort to get the gun away from Reed.  During the struggle the transmission was shifted into neutral and the SUV began drifting through the parking area toward the lot's edge; meanwhile, Thomas failed in his effort to dislodge the gun from Reed's control.  When the SUV stopped, Reed had control of the gun and Thomas asked him what he wanted.  Reed told Thomas he wanted all of his money and Thomas emptied his pockets and gave Reed what cash he had.  Reed then demanded the vehicle as well, and while Thomas was telling Reed that he could have whatever he wanted, Thomas saw another opportunity to go for the gun, which he did, lunging at Reed.

Thomas describes what happened next as a "huge altercation" within the front seats of the SUV, resulting in heavy damage to the interior and a cracked windshield.  As Thomas began to gain some advantage in the struggle over the gun, the door on the passenger side of the SUV came open and the two rolled out of the vehicle and onto the ground, still grappling over control of the handgun.  Thomas gained enough control of the gun to start pulling the trigger and he fired the gun until it stopped firing.  Thomas did not

3

know exactly where the muzzle of the gun was pointed, how many shots were fired or where the bullets were landing, until Reed moved away a couple of steps and turned to look at Thomas.  Thomas states that at that point he could tell by the look on Reed's face that Reed had been hit by a gunshot.  Reed then fell to the ground.  He had been shot three times, a glancing wound to his side and two shots in his back.  Thomas maintains that the only intent he had with regard to his actions, after being shot, was to make sure he was not shot again.  He claims to have had no specific intent to shoot Reed in order to alleviate the threat to his life, his intent was simply to make sure the gun could not shoot him another time.

After Reed fell to the ground, Thomas noticed his own breathing was becoming shallow and labored as he went down to his knees.  He found his cell phone on the ground and called 911.  Witnesses at the video store had called the police as well after hearing a shot, locking the store doors and running to the back of the store.  Thomas kept possession of the gun until the police arrived.  Thomas was hospitalized for close to a week but has recovered from his wound.  Detective Patterson investigated the scene, interviewed Aaron Thomas and others who had witnessed parts of the incident.  At the conclusion of his investigation, Patterson and a representative from the prosecutor's office concluded that Thomas had shot Reed in self-defense.  No charges were brought against Thomas.

On January 9, 2009, Shawn Reed's mother, Itearices Lincey, filed a wrongful

death lawsuit in state court, on behalf of herself and Reed's estate. She named as defendants, the City of Indianapolis, the Indianapolis Fire Department and Aaron Thomas. The lawsuit before this court was filed by Liberty Mutual Fire Insurance Company ("Liberty Mutual"), which insured Thomas's condominium and SUV through two separate policies. Liberty Mutual seeks a declaratory judgment that neither of its policies provide coverage to Aaron Thomas for the claims brought against him by Itearices Lincey and that it has no obligation to defend him against the wrongful death lawsuit. Liberty Mutual has moved for summary judgment with respect to the lack of coverage provided under the automobile policy only.

## I.     SUMMARY JUDGMENT STANDARD

The construction of an insurance policy and the determination of the rights and obligations thereunder are questions of law which may be disposed of on summary judgment. *Amerisure, Inc. v. Wurster Constr. Co.*, 818 N.E.2d 998, 1001 (Ind.App.2004), *clarified on reh'g on other grounds*, 822 N.E.2d 1115 (2005). The court will grant summary judgment under Federal Rule of Civil Procedure 56 if a party presents evidence that demonstrates the absence of a genuine issue of material fact. *See* Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The party seeking summary judgment may rely on "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to show an absence of a genuine issue of material fact. *Celotex Corp.,* 477 U.S. at 324. If "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party," then a genuine issue of material fact exists and the motion for summary judgment will be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court views the facts in the light most favorable to non-movants, drawing all reasonable inferences in their favor. *Keeton v. Morningstar, Inc.,* 667 F.3d 877, 884 (7th Cir. 2012).

## II.  CRITICAL POLICY PROVISIONS

Liberty Mutual's automobile liability policy provides that it will ". . .pay damages for . . . bodily injury . . . for which any insured becomes legally responsible because of an auto accident." There is no question that Aaron Thomas is an insured. The policy also provides that Liberty Mutual will defend the insured against such claims, but that it ". . . has no duty to defend any suit or settle any claim for bodily injury... not covered under this policy." An exclusion in the policy negates coverage ". . . for any insured . . . who intentionally causes bodily injury. . . ."

## III.  DISCUSSION

Reed's death was the result of his being shot while both he and Thomas were outside the SUV. Liberty Mutual contends that any liability which Thomas may have to Lincey is not "because of an auto accident" and the use or ownership of the SUV was not a predominate cause of Reed's mortal injuries. Lincey and Thomas maintain that the SUV was clearly intricately involved in the circumstances:  the physical altercation

started in the SUV; Reed and Thomas were falling out of the vehicle when Thomas gained control of the gun and began firing it; and, the SUV itself was allegedly an item sought by Reed as a part of his robbery attempt. Consequently, Defendants argue that the "use" of the vehicle was at issue and a question of fact precludes summary judgment. The court disagrees with the Defendants.

Indiana law requires the court to interpret a contract, including an insurance contract, giving all language its plain and ordinary meaning. *Commercial Union Ins. v. Moore,* 663 N.E.2d 179, 180 (Ind.App. 1996). If there is no ambiguity in the language, a court applies the policy language to the undisputed facts. *Id.* Further, an ambiguity does not exist simply because the two sides to a dispute seek a different interpretation. *State Farm Mut. Auto. Ins. Co. v. Spotten,* 610 N.E.2d 299, 300 (Ind.App. 1993).

In this instance, the policy clearly limits the insurer's obligation to pay for personal injury damages to a circumstance where Thomas has been found liable for the same because of an "auto accident." That is simply not the circumstance in this case. Damages are being sought in the wrongful death lawsuit because Thomas shot Reed, and if Thomas is found liable it will not be because of an "auto accident," but because the fact-finder determines that Thomas acted intentionally or in some manner other than to protect himself.

Even if the wrongful death lawsuit resulted in a determination that Thomas was

liable for negligently shooting Reed, "[t]he accident did not arise out of the use of the truck."  *See generally Indiana Lumbermens Mut. Ins. Co. v. Statesman Ins. Co.,* 291 N.E.2d 897, 898 (Ind. 1973).  For an auto accident to have caused Reed's death, the efficient and predominating cause of the accident must arise out of the use of the automobile.  *Id.* at 899.  Here the proximate cause of Reed's mortal wounds was not the use of the SUV.

　　　Defendants have not referred the court to any recorded cases where "auto accident" has been interpreted to include an act that occurred entirely outside the vehicle, as is the circumstance of this case with regard to Thomas's firing of the shots that claimed Reed's life.  In fact, the only case law cited by Defendants were decisions that examined the issue of "intent" and found that whether an act was intentional or not was a question of fact.  While there may be an "intentional acts exclusion" in the automobile policy, that is not the basis upon which summary judgment is being sought or granted.  Thomas's intent is immaterial if the injuries did not occur because of an "auto accident."  Accordingly, Plaintiff's Motion For Partial Summary Judgment is granted and the court finds that the automobile liability insurance policy issued by Liberty Mutual provides no coverage to Thomas and the insurer is not obligated to defend Thomas on the basis of the provisions of  that policy.

## IV.     CONCLUSION

For the reasons explicated in this entry, Plaintiff's Motion For Partial Summary Judgment (Docket # 26) is **GRANTED**.

**SO ORDERED** this 23rd day of April 2012.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

David Austin Cox
BAYLIFF, HARRIGAN CORD & MAUGANS, P.C.
dave.cox@bhcmlaw.com

Mark D. Gerth
KIGHTLINGER & GRAY
mgerth@k-glaw.com

Mark A. Hurt
hurtlawoffice@hotmail.com

Mitchell M. Pote
LAW OFFICE OF MITCHELL M. POTE
mitchell.pote@gmail.com